## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| POST-CONFIRMATION COMMITTEE | : | |
| FOR SMALL LOANS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:13-CV-191 (WLS) |
| | : | |
| INNOVATE LOAN SERVICING | : | |
| CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### ORDER

Pending before the Court is Defendant Innovate Loan Servicing Corp.'s Motion for Judgment on the Pleadings (Doc. 30). For the reasons that follow, that Motion (Doc. 30) is **DENIED.**

### FACTUAL BACKGROUND[1]

The Money Tree of Georgia, Inc. ("TMG"), Small Loans, Inc. ("SLI"), The Money Tree, Inc. ("TMT"), The Money Tree of Florida, Inc. ("TMF"), and The Money Tree of Louisiana, Inc. ("TML", collectively "the Debtors"), were engaged in the consumer finance business in Georgia, Alabama, Florida, and Louisiana, respectively. (Doc. 9 at ¶ 4.) The Debtors, who were insolvent since at least 2009, filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code on December 16, 2011, in the United States Bankruptcy Court for the Middle District of Alabama. (*Id.* at ¶¶ 5 & 14.) The Debtors' creditors are primarily individual investors in Georgia. (*Id.* at ¶ 13.) Plaintiff Post-Confirmation Committee for Small Loans, Inc., was formed pursuant to an Amended Joint Plan of Liquidation ("the Plan"), and has standing to bring any claims and causes of action held by the Debtors' estates. (*Id.* at ¶ 5.) The Plan expressly preserved claims against De-

---

[1] For the purposes of resolving a motion for judgment on the pleadings, the Court must accept all facts asserted in the Complaint as true. *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996).

fendant Innovate Loan Servicing, Corp. ("Innovate"), a Texas corporation with its principal place of business in Texas. (*Id.* at ¶¶ 5 & 6.)

Defendant Best Buy Autos of Bainbridge, Inc. ("Best Buy"), a Georgia corporation and subsidiary of TMG, was in the business of selling and financing automobiles to sub-prime borrowers. (*Id.* at ¶¶ 7, 11 & 12.) Best Buy generated accounts receivable when it financed the purchase of automobiles by consumers, typically held the promissory notes, and collected the accounts in the ordinary course of its business. (*Id.* at ¶ 11.) Best Buy financed its operations by borrowing cash from TMG, and owes TMG at least $16.97 million. (*Id.*)

Best Buy and Innovate entered into a Purchase and Sale Agreement of Contracts, dated June 23, 2010 ("the 2010 Agreement"), pursuant to which Best Buy assigned accounts with a face value of at least $880,000 in exchange for $749,236 in cash. (*Id.* at ¶ 15.) The actual value of the assigned accounts was substantially higher than either of those figures because the accounts bore an average interest rate above 21%. (*Id.*) The contract required Best Buy to repurchase unpaid accounts. (*Id.*) Best Buy's management did not understand the import of the repurchase obligations when the 2010 Agreement was signed and, although management was advised against entering the 2010 Agreement by at least one third party, they would not have entered into that Agreement if they had understood the terms. (*Id.* at ¶ 16.)

Best Buy and Innovate entered into a second agreement dated December 14, 2011 ("the 2011 Agreement"), pursuant to which Best Buy assigned accounts receivable with a face value of at least $5,210,339.97 in exchange for $4,428,788.98 in cash. (*Id.* at ¶ 18.) The 2011 Agreement was executed two days prior to the Debtors' bankruptcy filing. (*Id.* at ¶ 24.) As with the 2010 Agreement, the actual value was significantly higher than the face value or amount paid because the accounts bore an average interest rate above 19%. (*Id.* at ¶ 18.) Under the 2011 Agreement, Best Buy assumed the same repurchase obligations contained in the 2010 Agreement. (*Id.*)

Innovate conducted extensive due diligence and purchased the highest quality accounts owned by Best Buy. (*Id.* at ¶ 21.) Those accounts were also secured by the vehicles' titles. (*Id.*) These actions by Innovate eliminated most of the risk associated with purchasing the referenced accounts. (*Id.*) Pursuant to the 2010 Agreement, Best Buy guaranteed nine

monthly payments to Innovate by the account debtors. (*Id.* at ¶ 22.) If any of those payments were not made on a particular account, Innovate could require Best Buy to repurchase that account. (*Id.*) Pursuant to the terms of the 2011 Agreement, Best Buy guaranteed three monthly payments or six biweekly payments to Innovate by the account debtors. (*Id.* at ¶ 23.) If any of those payments were not made, Innovate could require Best Buy to repurchase that account. (*Id.*) As a result of the repurchase obligations, Best Buy was required to pay Innovate more than $1 million to repurchase accounts. (*Id.* at ¶ 26.)

The Amended Complaint in this case, which was filed on February 26, 2014, seeks to set aside the 2010 and 2011 Agreements and the repurchase obligations contained in those Agreements as fraudulent transfers under Georgia's Fraudulent Transfer Act. (*Id.* at ¶ 27.)

## ANALYSIS

"Judgment on the pleadings under [Federal Rule of Civil Procedure 12(c)] is appropriate where there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley*, 292 F.3d at 700 (citing *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999). Accordingly, the Court, when reviewing a motion for judgment on the pleadings, must "accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996) (citing *Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54, 57 (5th Cir. 1978)).

### I.    Sufficiency of allegations

Innovate moves to dismiss the Committee's complaint for failing to state causes of action for constructive or actual fraud. (Doc. 30 at 12-22.) Innovate bases its argument on its contention that the Committee must meet the pleading requirements found at Federal Rule of Civil Procedure 9(b), not the less-stringent requirements of Rule 8(a). (*See id.*) The Committee argues that Rule 9(b) only applies to its claim for actual fraud and, in any event, its complaint meets the stringent pleading requirements of Rule 9(b).

3

The Georgia Fraudulent Transfers Act provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

  (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

  (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

    (A) Was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

    (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Ga. Code Ann. § 18-2-74. Rule 9(b) requires a plaintiff "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." To meet that pleading requirement, the Committee's "complaint must allege the details of the . . . allegedly fraudulent acts, when they occurred, and who engaged in them." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505 (11th Cir. 1988). The purpose of the heightened pleading requirement is to "alert defendants to the precise misconduct with which they are charged and to protect defendants against spurious charges of immoral and fraudulent behavior." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (citation and brackets omitted).

The Court finds that the Committee, even under Rule 9(b), has pleaded both actual and constructive fraud with the 2010 and 2011 Agreements and the repurchase obligations contained therein. The Committee alleged that Innovate entered into contracts to purchase accounts receivable related to subprime vehicle loans secured with the subject vehicles. (Doc. 9 at ¶ 21.) According to the amended complaint, Innovate knew that Best Buy's liabilities exceeded its assets at the time of the 2010 and 2011 Agreements, which were executed on June 23, 2010, and December 14, 2011, respectively, and nonetheless negotiated contracts and repurchase agreements with onerous and burdensome terms. (*Id.* at ¶¶ 15, 18 & 36.)

Although "Best Buy received a high par value (85%) in . . . cash for [the] accounts receivable,"[2] those accounts bore interest rates near or above 20% and Best Buy was required to buy back any nonperforming account.  (*See* Doc. 30 at 16-17.)  In other words, Innovate entered into the referenced Agreements without any risk to itself but with great risk to Best Buy, which was insolvent at that time; for that reason, it cannot be said that Best Buy received reasonably equivalent value for the accounts.  *See In re TOUSA, Inc.*, 680 F.3d 1298, 1311 (11th Cir. 2012) (citations omitted) (noting that "whether fair consideration has been given for a transfer is 'largely a question of fact' ").  Further, the 2011 Agreement was allegedly executed two days prior to the day the Debtors, including Best Buy's parent company, filed for bankruptcy.  (*Id.* at 24.)  Based on these allegations, one can reasonably infer that Innovate negotiated those agreements and their terms, knowing of Best Buy's parent company's insolvency and management's ignorance, with fraudulent intent.

The referenced allegations plead the allegedly fraudulent acts, when they occurred, and who engaged in them, and put Innovate on notice of the precise misconduct with which it is charged.  For that reason, the Court finds that, even if Rule 9(b) applies—which the Court assumes but does not decide—the Committee has sufficiently stated claims for actual and constructive fraud.

## II.     *In Pari Delicto* defense

The Committee is acting on behalf of the Debtors and all claims available to the Debtors, as well as all defenses applicable to those claims, are likewise available to the Committee and its claims.  *See Official Comm. Of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150 (11th Cir. 2006).  "When both parties are equally at fault, equity will not interfere but will leave them where it finds them."  Ga. Code Ann. § 23-1-15.  That statute codifies the common law doctrine of *In Pari Delicto*.  *See Nash v. Jones*, 162 S.E.2d 392, 394 (Ga. 1968).  "Where two parties engage in a fraudulent transfer and are in pari delicto, 'equity will leave [the parties] where it finds them.' "  *Laxton v. Laxton*, 507 S.E.2d 146, 147 (Ga. Ct. App. 1998) (citations omitted).  Innovate states that the referenced defense applies be-

---

[2] The Court rejects Innovate's argument that the amended complaint pleads facts demonstrating reasonably equivalent value as a matter of law.  Although Innovate paid Best Buy at least 85% of the face value of the accounts receivable, the accounts bore high rates of interest.  For that reason, the accounts were worth substantially more than their face value.

cause Bradley Bellville, President of Best Buy and its parent company TMG, signed the 2010 and 2011 Agreements. Therefore, Innovate argues, a Debtor is just as culpable as Innovate and, because the *In Pari Delicto* defense would bar that Debtor from bringing this suit, the Committee should likewise be barred from bringing this suit and dismissal is warranted. The Court disagrees.

Innovate admits that the Committee's amended complaint does not establish that Bellville was the president of TMG and Best Buy, Best Buy is wholly owned by TMG, or Bellville signed both Agreements. (*See* Doc. 30 at 23-24.) As a result, at this stage, the Court cannot conclude as a matter of law that the Committee's claims are barred by the *In Pari Delicto* defense. Further, determining whether the Parties are "equally at fault" is a fact-intensive inquiry best decided at a later stage of litigation. *See generally Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985).

<u>**CONCLUSION**</u>

For the reasons stated above, Defendant Innovate Loan Servicing Corp.'s Motion for Judgment on the Pleadings (Doc. 30) is **DENIED**.

**SO ORDERED**, this  30th  day of January 2015.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**